Hearing:
May 13, 1987
Stewart
Paper No. 37    F152

FOR PUBLICATION IN FULL

U. S. DEPARTMENT OF COMMERCE
PATENT AND TRADEMARK OFFICE

Trademark Trial and Appeal Board

The Reynolds and Reynolds Company
v.
I. E. Systems, Inc.

Opposition No. 72,373, to Application Serial No. 457,109, filed December 15, 1983.

Biebel, French & Nauman for The Reynolds and Reynolds Company.

Joseph S. Iandiorio for I. E. Systems, Inc.

Before Sams, Rooney and Krugman, Members.

Opinion by Rooney, Member:

The Reynolds and Reynolds Company has opposed registration of the mark ACCULINK for a computer program for asynchronous communications use.[1]  The grounds for opposition are that, since long prior to applicant's first use, opposer has been engaged in the marketing and sale of business forms, computer products, computer supplies, computer services and leasing of computers in connection with which modems and communications programs are extensively used; that opposer has several ACCU prefixed marks which are used for said goods and services, a number of which are registered;[2] and that as used on its goods, applicant's mark so resembles opposer's

---

[1] Ser. No. 457,109 filed December 15, 1983 claiming use since November 1982.
[2] Regn. No. 989,764, ACCUTAX, issued July 30, 1974, Section 8
(Footnote continued on next page)

marks as to be likely to cause confusion, mistake or deception. Applicant has denied opposer's allegations of likelihood of confusion.

The record consists of status and title copies of opposer's registrations submitted under a notice of reliance; applicant's first set of interrogatories and first request for admissions and opposer's responses thereto submitted by applicant's notice of reliance and testimony with exhibits on behalf of both parties. Both parties submitted briefs and an oral hearing was held in which both were represented.

Reynolds & Reynolds has been in the business of servicing accountants for over 100 years. Until 1979 the business involved accounting forms, printing forms and office supplies. Beginning in 1979, the company moved into the tax preparation field including computerized tax preparation. (Replogle, Cross, p. 39)

---

(Footnote cont. from page 1)
affidavit accepted, Section 15 affidavit filed; Regn. No.989,765, ACCUTAX, issued July 30, 1974, Section 8 affidavit accepted; Regn. No. 1,018,606, ACCUPAY, issued August 19, 1975, Section 8 affidavit accepted, Section 15 affidavit filed; Regn. No. 1,018,607, ACCUMATION, issued August 19, 1975, Section 8 affidavit accepted, Section 15 affidavit filed; Regn. No. 1,224,235, ACCUTUTOR, issued January 18, 1983; Regn. No. 1,24,650, ACCUCALC, issued January 18, 1983; Regn. No. 1,241,570, ACCULEDGER, issued June 7, 1983; Regn. No. 1,265,723, ACCUPAK, issued January 31, 1984.

Accumation, Inc. was acquired by opposer in September of 1979. Accumation began in the early 70's as a tax preparation business which upon acquisition became the Tax Systems Division of opposer. Marks in use by Accumation when acquired by opposer were ACCUMATION, ACCUTAX and ACCUPAY. A number of other marks were adopted and in addition to its registration for ACCUTAX for preparation of income tax returns by computer; ACCUPAY for computer processing services, namely, preparing employee payroll reports for others; and ACCUMATION for computer processing services, namely, preparing income tax returns, employee payroll reports and billings for others, opposer has registered ACCUTUTOR for educational materials, namely, combination study guides and workbooks and reference manuals for instruction in computerized income tax preparation and educational services, namely, conducting training seminars in computerized income tax preparation; ACCUCALC for leasing of computer software, namely, programs for calculating assets, amortization and depreciation; ACCULEDGER for leasing computer software, namely, accounting programs and ACCUPAK for business forms, namely, tax organizer booklets. Opposer's marketing manager indicated that there are several unregistered marks as well, ACCUGRAM for a direct mailer concept used for all of the other ACCU products; ACCUTIPS, a bulletin sent to customers with hints on use of the opposer's software packages and ACCUMED, a medical system batch product. The market for opposer's goods and services includes "anyone who does tax returns", specifically "accountants, tax preparers, tax practitioners, tax attorneys, enrolled agents, bookkeeping

3

services that do tax returns, accounting firms, certified public accountants, public accountants". (Replogle, p. 12) Opposer's ACCU marks are used on all sales promotion literature, flyers, in direct mail campaigns, on data sheets., order forms, and internal forms. The marks are advertised through accounting trade publications, conventions, tax seminars, direct sales force and direct mail. (Replogle, p. 13) Opposer's sales manager (Kummrow) testified to sales well over 10 million dollars yearly from 1983 to mid-1986 of which 98 to 99% were directly attributable to products and services sold under ACCU prefixed marks. There is testimony indicating that sales of ACCUTAX products and services accounts for 90% of the sales under the ACCU prefixed marks and ACCUPAY makes up the other 10%. (Kummrow, p. 19)

In addition to the Tax Systems Division, opposer also has a leasing subsidiary, Reyna Financial Corporation which leases computer equipment as well as other types of equipment, and a Medical Systems Division which sells computer systems and forms to physicians. However, it is the Tax Systems Division in which the ACCU marks are used.[3] (Harwith, deposition of June 18, 1986, p. 12)

---

[3] At one time opposer's predecessor, Accumation, tried to develop a medical system (presumably for accounting) which it called ACCUMED but it was said to be a "money loser" and it was dropped. (Kummrow, p. 23)

4

Applicant markets a software kit under the mark ACCULINK consisting of floppy disks used in a microcomputer system along with user documentation. The ACCULINK program on the disks is an "asynchronous data communication terminal emulation system...It allows a microcomputer to function as what's referred to in the industry as a dumb terminal." There are a number of versions of ACCULINK on the market designed for various computers. Those developed for use with microcomputers are referred to as ACCULINK micro. Versions developed for operation on minicomputers and/or mainframes are referred to as the ACCULINK host portion of the ACCULINK series.[4] Applicant licenses its software. Its primary market is manufacturers of microcomputers. Applicant's witness estimated that seventy-five percent of its market is in the OEM area and the other twenty-five percent would include end users, dealers and distributors. Sales related to OEM activities amounts to 50 to 60 thousand dollars a year.

Because of opposer's ownership of its pleaded registrations, the question of priority need not be discussed. See Warner Corporation v. Pneumatic Hydraulic Development Co., Inc., 185 USPQ 181 (TTAB 1975).

_____

[4] "Host" is a term used to refer to the fact that "one very large computer deals with a number of smaller data points of access, terminal devices, microcomputers. So the larger one that deals with all the others is characterized as the host, which could be a minicomputer or a mainframe."

5

The evidence submitted by opposer leads us to conclude that it does have a family of ACCU prefixed marks. The determination that a family of marks exists is generally predicated on the theory that, as a result of the extensive use and promotion of a group of marks each of which has a common component for a specific line of goods or services the relevant public has come to identify the source of these goods or services by the common features. See Medical Modalities Associates, Inc. v. ARA Corporation, 203 USPQ 295 (TTAB 1979). There is sufficient evidence in this record of advertising, promotion and use of two or more of opposer's marks conjointly in a manner calculated to impress upon the relevant public that ACCU marks used in opposer's field of endeavor indicate source in opposer. See for example Opposer's Exhibits 29, 30, 33, 37, 42, 45, 46, 47 and 50. While ACCU no doubt has a suggestive connotation, it is not so highly suggestive as to impair its ability to serve as the basis for a family of marks.[5] Thus, it is our opinion that goods or services similar or related to those of opposer which are marketed under marks which contain opposer's family characteristic would be likely to be attributed to opposer.

The only question which we must decide is whether or not applicant's goods sold under the ACCULINK mark are so

---

[5] Ms. Replogle testified that the prefix did indeed suggest accuracy in the beginning but that opposer no longer viewed it in that light, considering it only as a family designation associated with the Tax Systems Division. (p. 11) However, we are concerned with how the relevant public would view the term and in opposer's field, the suggestion of accuracy appears to be the obvious interpretation.

similar or related to the goods and services sold under opposer's pleaded marks that the relevant public would because of confusion, mistake or deception, believe that applicant's mark belongs to opposer's family and that applicant's goods therefore originate with opposer.

It is important to note that, in order to support a holding of likelihood of confusion, there must be some similarity between the goods and services at issue herein beyond the fact that each involves the use of computers. In view of the fact that computers are useful and/or are used in almost every facet of the world of business, commerce, medicine, law, etc., it is obvious that distinctions must be made. See In re Quadram Corp., 228 USPQ 863 (TTAB 1985).

In the instant case, opposer is involved in computerized accounting of one type or another. Opposer has used and registered a number of ACCU prefixed marks in this field. The evidence reveals that opposer's customers for its ACCU marked products and services are anyone that does tax returns including, accountants, tax preparers, tax practitioners, tax attorneys, enrolled agents, bookkeeping services that do tax returns, accounting firms, certified public accountants, public accountants. Promotion of opposer's marks is done in accounting trade publications and conventions,[6] at tax seminars, direct mail and through the direct sales force. (Replogle, p. 13)

----

[6] There is testimony that opposer has exhibited some of its products at the Comdex trade show for computer products but the witness did not say these were ACCU-marked products. In fact, while opposer does have other divisions dealing in computer products, they are not sold under any of the ACCU marks.

Applicant's product is an asynchronous[7] data communication terminal emulation system. According to the testimony of Mr. Eveleth, applicant's president, the ACCULINK program allows a microcomputer to function as a "dumb terminal"[8] and also allows it to emulate very specific categories of terminals. The standard ACCULINK product supports terminals manufactured by Digital Equipment Corporation, Models 52, 100 and 102. It also allows the user to emulate the IBM 3101 character mode terminal, the Televideo 801 terminal and a terminal called the Adam 3A. (Eveleth, p. 16) Applicant has been adapting asynchronous data communications software to microcomputers since 1978 and each adaptation differs from one computer to the next depending upon the hardware design and architecture of the specific computer. (Eveleth, p. 19)

---

[7] An asynchronous computer is "a computer in which a signal indicates when an operation is completed and also serves as the signal to begin another operation,'so that the operations do not start and stop at regular, timed intervals." A synchronous computer is one "in which timed signals are used to start and stop an operation, allowing sufficient time between signals to complete the operation: the signals are sent out by a clock built into the circuitry of the computer." (Webster's New World Dictionary of Computer Terms 1983)

[8] A "dumb terminal" is defined as one which "provides only for the input and output of data to and from the computer and cannot be programmed to perform other functions." (Webster's New World Dictionary of Computer Terms, supra)

8

It is opposer's burden to establish that applicant's products and services are so related to its own that purchasers are likely to assume that applicant's ACCULINK mark as used on those products is another in opposer's family of marks. The evidence shows that opposer does have a division which deals in computers and computer related products. But, it is clear that the ACCU marks are confined in their use to the products and services of the Tax Systems Division. Opposer argues and there is testimony showing that plans have been made for a remote transmission system to be used in connection with the computerized accounting and tax preparation services. However, at the time the testimony was taken, no such system was in operation. Moreover, even if there had been such a system, it, too, would have been in the accounting area. When asked who were opposer's competitors in remote transmission computer programs, both Mr. Avanzino (p. 16) and Mr. Kummrow (p. 20) responded that their main competitors would be Computax, Unitax, Fast-Tax, and Dynatax, obviously other tax preparation companies.

There is no evidence that applicant offers any kind of accounting capability at all and, in fact, applicant's witness testified to that fact. There is testimony that 75% of applicant's sales are to manufacturers of computers, the rest to end users, distributors and retailers. Opposer argues that

9

we cannot consider that testimony because applicant's identification of goods is not so restricted. However, we are constrained to consider the normal channels of trade for the goods, as identified. While opposer argues against our considering that testimony, it has offered no evidence, nor is it otherwise clear that those are not normal channels of trade for asynchronous communication software.

The crux of this case is that applicant is offering a specific type of software for operational uses while the products and services offered by opposer under its ACCU marks are applications software aimed at a very narrow field.

Accordingly, it is our opinion that goods sold under applicant's mark are sufficiently different from those goods and services for which opposer uses its ACCU family of marks as to preclude the likelihood of confusion.

Decision: The opposition is dismissed.

J. D. Sams

L. E. Rooney

G. D. Krugman
Members, Trademark
Trial and Appeal Board

10

DEC 4 1987